FORM B104 (08/07)                                                    2007 USBC, Central District of California

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Page 2) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>ANTONIA PEREZ and ORTENCIA PEREZ | DEFENDANTS<br>JAMES F. LIBERTO, M. CELESTE LIBERTO |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>ROBERT A. BROCK, ESQ., LAW OFFICE OF ROBERT A. BROCK, 2617 No. San Fernando Blvd., Burbank, CA 91504<br>(818) 767-0236 | ATTORNEYS (If Known)<br>David A. Tilem, Esq., Law Offices of of David A. Tilem, 206 No. Jackson Street, Suite 201, Glendale, CA 91206<br>(818) 507-6000 |
| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |

| CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)<br>Determine Dischargeability under 11 USC s. 523(a)(2)(A) (money procured by false pretenses, false representation or actual fraud)<br>Determine Dischargeability under 11 USC s. 523(a)(4) (fraud or defalcation while acting in a fiduciary capacity, embezzlement, etc.)<br>Objection to Discharge under 11 USC s. 727(a)(4)(A) (false oath or account: misrepresentations in Schedules and Declaration) |
|---|

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ [3] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ [1] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ [2] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

RECEIVED
MAY 03 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 548,816.00 |

Other Relief Sought
Determination that community property interest are a part of the bankruptcy estate.
Attorney fees and costs

FORM B104 (08/07), page 2                                                2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>JAMES F. LIBERTO | | BANKRUPTCY CASE NO.<br>2:11-bk-13186-B |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISIONAL OFFICE | NAME OF JUDGE<br>Hon. Sheri Bluebond |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>5/3/11 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Robert A. Brock | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Robert A. Brock, Esq. (SBN 113358)<br>LAW OFFICE OF ROBERT A. BROCK<br>2617 No. San Fernando Blvd.<br>Burbank, CA 91504<br><br>Tel: (818) 767-0236<br>Fax: (818) 767-4373<br><br>**RECEIVED**<br>**MAY 03 2011**<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY_____ Deputy Clerk | |

*Attorney for Plaintiff* Antonia Perez and Ortencia Perez

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| In re:<br>JAMES F. LIBERTO | | CHAPTER 7 |
|---|---|---|
| | | CASE NUMBER  2:11-bk-13186-BB |
| | Debtor. | ADVERSARY NUMBER |
| ANTONIA PEREZ and ORTENCIA PEREZ | Plaintiff(s), | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)* |
| vs.<br>JAMES F. LIBERTO; and M. CELESTE LIBERTO, | Defendant(s). | **SUMMONS AND NOTICE OF STATUS CONFERENCE** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| Hearing Date: | Time: | Courtroom: | Floor: |
|---|---|---|---|

☒  **255 East Temple Street, Los Angeles**          ☐  **411 West Fourth Street, Santa Ana**

☐  **21041 Burbank Boulevard, Woodland Hills**     ☐  **1415 State Street, Santa Barbara**

☐  **3420 Twelfth Street, Riverside**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**KATHLEEN J. CAMPBELL**
**Clerk of Court**

By: _____
    *Deputy Clerk*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*February 2010 (COA-SA)*

**F 7004-1**

Summons and Notice of Status Conference - *Page 2*    **F 7004-1**

| In re<br>JAMES F. LIBERTO | (SHORT TITLE)<br><br>Debtor(s). | CASE NO.: 2:11-bk-13186-BB |
| --- | --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2617 No. San Fernando Blvd.
Burbank, CA 91504

A true and correct copy of the foregoing document described as  SUMMONS AND NOTICE OF STATUS CONFERENCE  with NOTICE REQUIRED BY LOCAL BANHRUPTCY RULE 7026-1         will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

Hon. Sheri Bluebond, 255 E. Temple Street, Suite 1482, Los Angeles, CA 90012 (drop-box outside door)

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On 5/3/11 _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

James F. Liberto,10085 Tujunga Canyon #6, Tujunga, CA 91042
David A. Tilem, Esq., Law Offices of of David A. Tilem, 206 No. Jackson Street, Suite 201, Glendale, CA 91206
Richard K. Diamond, TR, Danning Gill Diamond & Kollitz, 2029 Century Park East, 3rd Fl., Los Angeles,CA 90067-2904
U.S. Trustee (LA), 725 S. Figueroa Street, 26th Floor, Los Angeles, CA 90017

☑ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 5/3/11 | Robert A. Brock | |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 7004-1**

*February 2010 (COA-SA)*

In re Liberto, James F, Debtor
Chapter 7 Case No. 2:11-bk-13186-BB
Adv. Proceeding No. _____
Summons and Notice of Status Conference
Attachment to Proof of Service


II. Service by U.S. Mail (additional party)
M. Celeste Liberto, 2939 Santa Carlotta, La Crescenta, CA 91214

1  Robert A. Brock, Esq. (State Bar No. 113358)
   LAW OFFICE OF ROBERT A. BROCK
2  2617 No. San Fernando Blvd.
   Burbank, California 91504
3  Telephone: (818) 767-0236
   Facsimile: (818) 767-4373

4

5  Attorney for Plaintiffs ANTONIA PEREZ
   and ORTENCIA PEREZ

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  James F. Liberto,                    )   Case No. 2:11-bk-13186-BB
                                         )
12              *Debtor.*                )   Chapter 7
                                         )
13  _____         )   Adversary Case No.
                                         )
14  ANTONIA PEREZ and ORTENCIA           )   COMPLAINT TO DETERMINE
    PEREZ,                               )   DISCHARGEABILITY OF DEBTS AND
15                                       )   OBJECTING TO DISCHARGE
                Plaintiffs,              )
16                                       )   [11 U.S.C. §523 (a) (2) (A) & (a) (4) and
    vs.                                  )   §727(a)(4)(A)]
17                                       )
    JAMES F. LIBERTO; and M. CELESTE     )
18  LIBERTO,                             )
                                         )
19              Defendants.              )
    _____         )

20

21

22      Plaintiffs ANTONIA PEREZ ("ANTONIA") and ORTENCIA PEREZ

23  ("ORTENCIA")(collectively "Plaintiffs"), creditors in the above-caption Chapter 7 case, as and for

    their complaint herein, allege as follows:

24

25                  **I. JURISDICTION AND VENUE**

26      1.      This adversary proceeding is brought pursuant to Federal Rule of Bankruptcy

27  Procedure 7001 subparts (4) and (6), and Sections 523(a)(2)(A) and (a)(4) and 727(a)(4) of Title 11

28

                                    -1-

                              _____

of the United States Code [the Bankruptcy Code]. This is a core proceeding as defined in 28 U.S.C. Section 157(b)(2)(A).

2.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. Sections 157(b)(1) and 1334. This adversary proceeding relates to a case under Chapter 7 of the Bankruptcy Code which was commenced by the petition for relief filed by the above-captioned debtor in the United States Bankruptcy Court for the Central District of California on January 25, 2011, as case number 2:11-bk-13186-BB.

3.     Venue is proper in this district pursuant to 28 U.S.C. Section 1409(a).

## II. PARTIES

4.     At all times relevant herein, Plaintiff ANTONIA PEREZ (hereinafter "ANTONIA") is and has been a resident of Los Angeles County, California.

5.     At all times relevant herein, Plaintiff ORTENCIA PEREZ (hereinafter "ORTENCIA") is and has been a resident of Los Angeles County, California.

6.     At all times relevant herein, Defendant JAMES F. LIBERTO (hereinafter "LIBERTO") is and has been a resident of Los Angeles County and is the debtor in the above-captioned Chapter 7 bankruptcy case.

7.     At all times relevant herein, Defendant M. CELESTE LIBERTO (hereinafter "CELESTE") is and has been a resident of Los Angeles County and is the wife of the Debtor in the above-captioned Chapter 7 bankruptcy case.

## III. GENERAL ALLEGATIONS

8.     At all times herein mentioned, LIBERTO held himself out to ANTONIA as a mortgage broker doing business as FUNDAMENTAL FINANCIAL SERVICES, a California sole proprietorship (hereinafter "FUNDAMENTAL"), and frequently solicited ANTONIA to invest in FUNDAMENTAL to fund short-term fully-secured private loans. At all times, FUNDAMENTAL is the alter-ego of LIBERTO such that no distinction can be drawn between LIBERTO and FUNDAMENTAL.

-2-

**The Sunland Loan**

9.      On or about July 20, 2007, Defendant LIBERTO asked ANTONIA if she had any money to invest. LIBERTO represented to ANTONIA that he had a private, short term, second mortgage opportunity and that he needed $110,000 to fund the loan. LIBERTO represented to ANTONIA that her loan would be for a term estimated to be about 6-12 months, until the borrower could clean up her credit, refinance her property and payoff the second mortgage. LIBERTO represented to ANTONIA that her money would earn interest at the rate of 11% per annum, payable to her monthly by the 5th day of each month, and that her money would be fully secured by a second mortgage against the borrower's residence located at 10920 Woodward Avenue, Sunland, CA 91040 ("the Sunland property"). LIBERTO represented to ANTONIA that the Sunland property had an appraised value of $520,000, that there was a first mortgage of about $155,400, and that would be ample equity as security for the second trust deed. LIBERTO further represented to ANTONIA that an assignment of the trust deed would be executed and delivered after the trust deed was recorded. ANTONIA told LIBERTO that she only had $60,000 available to invest. LIBERTO said that was okay, because he had another investor.

10.     On or about July 26, 2007, in reliance on LIBERTO's representations, ANTONIA delivered to LIBERTO two checks totaling $60,000. LIBERTO gave ANTONIA a written receipt for her investment in the Sunland loan. This loan was also referred to as "Ms. Helfand's loan."

11.     Beginning in September 2007, LIBERTO commenced making interest payments to ANTONIA in the amount $550 per month in accord with LIBERTO's promise of 11% interest on her loan. The first payment on or about September 21, 2007 was for August's interest and so forth, paid each month in arrears.

12.     In or about January 2008, LIBERTO asked ANTONIA if she had another $50,000 to invest, to buy out the other investor on the Sunland loan. ANTONIA told LIBERTO that she did not have the money available, but that she would ask her sister ORTENCIA to see if she wanted to invest on the terms previously represented and promised by Defendants. LIBERTO confirmed that ORTENCIA's investment would be on the same terms as ANTONIA's. On or about January 10, 2008, in reliance on the representations and promises made by LIBERTO to ANTONIA as the

-3-

1    agent of ORTENCIA, ORTENCIA furnished to LIBERTO the sum of $50,000.00 to replace the

2    other investor in the Sunland loan on the same terms represented by LIBERTO as set forth in

3    Paragraph 9 hereinabove.

4        13.    LIBERTO made monthly interest payments to ANTONIA and ORTENCIA on the

5    Sunland loan through June 2009, at the rate of 11% per annum, representing to Plaintiffs with

6    almost every payment that their principal was "well secured" and working for them.

7    **The Thousand Oaks Loan**

8        14.    In the Fall of 2007, LIBERTO discovered that ANTONIA was selling her home in

9    La Crescenta, California, whereupon LIBERTO asked ANTONIA if she would be interested in

10   investing her equity in a first mortgage for a short term loan not to exceed one year. ANTONIA

11   explained to LIBERTO that she planned to re-invest in another home to take advantage of the

12   Proposition 60 capital gains treatment, so that any loan of her funds would have to be for a short

13   term, no longer than one year. Defendant LIBERTO represented that he had a couple who wanted

14   to borrow $375,000 for no longer than one year to be secured by a first trust deed on their

15   residence, a condominium located at 3083 Hillcrest Dr., Thousand Oaks, California 91362 ("the

16   Thousand Oaks property"). LIBERTO represented to ANTONIA that if she would loan him the

17   sum of $375,000.00 to fund this loan for one (1) year or less, he would pay interest monthly at the

18   rate of nine and one-half percent (9.5%) per annum. ANTONIA asked LIBERTO if the loan

19   documents could be in her name but LIBERTO stated that the loan should be under his company

20   and not in ANTONIA's name so that in the event the refinance was delayed for any reason,

21   FUNDAMENTAL could pay off ANTONIA's loan when it became due in December 2008 and

22   continue to hold the Thousand Oaks note with funds from "other investors." LIBERTO

23   represented to ANTONIA that her money would be fully secured by a first trust deed on the

24   Thousand Oaks property, and that an existing loan from Bank of America would be subordinated to

25   the new first trust deed.

26       15.    On or about December 7, 2007, in reliance upon the representations and promises of

27   LIBERTO and on the brief history of receiving interest payments on the Sunland loan, ANTONIA

28   caused the sum of $375,000.00 to be wired from the escrow pertaining to the sale of her home in La

-4-

Crescenta to LIBERTO's "trust account." LIBERTO supplied a Promissory Note, a true copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference as though fully set forth. This loan was also referred to as "The Mestas' loan."

16.     LIBERTO made monthly interest payments to ANTONIA on the Thousand Oaks loan through June 2009, at the rate of 9.5% per annum, and continued to represent to ANTONIA on almost a monthly basis that her money was "well secured" and working for her.

**October 2008**

17.     When by October 2008, LIBERTO had advised neither ANTONIA nor ORTENCIA about the status of the Sunland loan, ANTONIA inquired of LIBERTO whether the Sunland borrower had refinanced and the Sunland loan paid off. LIBERTO responded that he did not know, that he would have to find out. Thinking this was strange, ANTONIA contacted the Sunland borrower directly and learned that the Sunland borrower had refinanced her property on or before August 1, 2008, and had paid off the Sunland loan. LIBERTO had never advised Plaintiffs that the Sunland loan had been paid off. By email on October 27, 2008, ANTONIA made a demand upon LIBERTO for the immediate payoff, by November 1, 2008, of Plaintiffs' loans (totaling $110,000) made to fund the Sunland loan.

18.     By letter to LIBERTO dated November 25, 2008, ANTONIA and ORTENCIA made a formal demand upon LIBERTO for immediate repayment of the principal they had furnished to LIBERTO to fund the Sunland loan, in the sum of $110,000.

19.     On or about December 3, 2008, LIBERTO repaid to ORTENCIA the sum of $20,000, reducing to $30,000 the principal amount of his obligation to ORTENCIA.

20.     Notwithstanding Plaintiffs' demands, LIBERTO still owes to Plaintiffs the principal sum of $90,000 ($60,000 to ANTONIA and $30,000 to ORTENCIA) due and owing in connection with the Sunland loan, plus all accrued interest thereon from and after July 1, 2009.

21.     In her email to LIBERTO on October 27, 2008, ANTONIA also inquired as to the status of the Thousand Oaks loan as it was about to become due. LIBERTO responded and advised ANTONIA that the Thousand Oaks borrower had been cut in her hours at work and was having difficulty making the interest payments. Thereafter, in late October 2008, ANTONIA contacted the

-5-

1    owners of the Thousand Oaks property and was advised that no such loan had ever existed,

2    notwithstanding LIBERTO's written representations that the $375,000 loan was secured by a first

3    trust deed against their property.

4         22.    By her letter to LIBERTO dated November 25, 2008, ANTONIA confronted

5    LIBERTO with the information that she had obtained and demanded immediate and full repayment

6    of the funds she had furnished to fund "the Thousand Oaks loan" together with all accrued interest.

7         23.    Notwithstanding Plaintiffs' demands, LIBERTO still owes to Plaintiff ANTONIA

8    the principal sum of $375,000 due and owing in connection with "the Thousand Oaks loan," plus

9    all accrued interest thereon from and after July 1, 2009.

10   **December 2008**

11        24.    By letter to Plaintiff ANTONIA dated December 3, 2008, LIBERTO admitted that

12   the Sunland loan had been paid off and claimed that he had re-invested the funds into three other

13   properties. LIBERTO further admitted that ANTONIA's $375,000 had not been invested in the

14   Thousand Oaks property, but had instead been "invested in trust through ... Tahoe Investments, care

15   of Richard Sacks." LIBERTO continued to reassure ANTONIA and ORTENCIA that their funds

16   were "absolutely safe," promised to liquidate their investments, and "guaranteed" the continued

17   interest payments to them, offering to execute and record a trust deed against his own home. A true

18   copy of LIBERTO's letter to ANTONIA dated December 3, 2008, is attached hereto as Exhibit

19   "B."

20        25.    LIBERTO continued to make the interest payments to Plaintiffs through June 2009,

21   at 11% per annum on the Sunland loan ($550/month on to ANTONIA and $275.00 to ORTENCIA)

22   and at 9.5% on the "Thousand Oaks loan" ($2,968.75 to ANTONIA). Following their receipt of the

23   June 2009 interest payments on or about July 19, 2009, Plaintiffs have received no more interest

24   payments from LIBERTO. Since the receipt of the June 2009 interest payment, despite

25   LIBERTO's many promises, Plaintiffs have not been repaid the principal balances due and owing

26   on their loans or any part thereof, have not received adequate security for their loans, and have not

27   received any further interest payments.

28        26.    There is now due and owing from LIBERTO to Plaintiffs the aggregate principal

1    sum of $465,000, plus interest at the agreed rates from July 1, 2009.

2    **Community Property**

3        27.    At all times material hereto, LIBERTO has been married to Defendant M. Celeste

4    Liberto (hereinafter "CELESTE").

5        28.    LIBERTO filed for dissolution of the marriage on February 18, 2009, listing May

6    28, 2008 as the date of separation (a date with which CELESTE concurred in her responsive

7    pleading), but a judgment of dissolution has never been entered.

8        29.    LIBERTO's liabilities owing to Plaintiffs ANTONIA and ORTENCIA were

9    incurred during the marriage and prior to the date of separation. Under California law, they are

10   debts of the marital community, and CELESTE is a joint debtor with LIBERTO.

11       30.    The assets listed in LIBERTO's schedules filed herein on or about January 25, 2011,

12   are community assets, including but not limited to the three real properties and the two timeshares

13   listed in LIBERTO's Schedule A. The three real properties and/or the proceeds from any sale

14   thereof should in their entirety be and remain assets of the bankruptcy estate.

15

16                                                 **FIRST CLAIM FOR RELIEF**

17                     **For Non-dischargeability of Debt for Money Obtained by**

18                     **False Pretenses, a False Representation, or Actual Fraud**

19                               **[11 U.S.C. §523(a)(2)(A)]**

20       31    Plaintiffs re-allege and incorporate herein as if fully set forth all of the allegations

21   contained in paragraphs 1 through 30 of this Complaint.

22       32.    In several conversations between late November 2007 and early December 2007,

23   LIBERTO represented to ANTONIA that he had an investment opportunity for her—to fund a first

24   mortgage in the amount of $375,000 on a property located at 3083 Hillcrest Dr., Thousand Oaks,

25   California 91362 ("the Thousand Oaks property"), that it would mature in 12 months or less, that it

26   would be secured by a first trust deed against the property, and that it would pay interest monthly to

27   ANTONIA at the rate of 9.5 percent per annum. In addition, LIBERTO furnished ANTONIA with

28   documents pertaining to the value of the Thousand Oaks property and to the creditworthiness of the

1  "borrowers."

2      33.    LIBERTO made these representations with the intent to induce ANTONIA's trust

3  and to induce her to deposit in his "trust account" the sum of $375,000 from the proceeds of the

4  sale of her home.

5      34.    In reliance on LIBERTO's representations and documentation, on December 7,

6  2007, ANTONIA caused the sum of $375,000 to be wired to LIBERTO's "trust account" directly

7  from the escrow managing the sale of her residence.  ANTONIA's reliance was justified because

8  of her prior social and business dealings with LIBERTO and the documentation he provided.

9      35.    These representations by LIBERTO were false and were known by LIBERTO to be

10 false at the time he made them and accepted and retained ANTONIA's funds. No such loan was

11 ever pending or was ever made. LIBERTO concealed from ANTONIA the true facts, that no loan

12 was in process with the owners of the Thousand Oaks property, and that he had no pending

13 opportunity to make the specified loan or any other short-term fully secured real estate loan.  He

14 concealed from ANTONIA his intention to use her funds for a different purpose than he had

15 represented to her, to invest her funds without her knowledge or consent in a risky and speculative

16 venture with some out-of-state "investment club," which investment would neither be short-term

17 nor secured by a perfected lien against real estate with sufficient equity.

18     36.    Rather than return the funds or inform ANTONIA of the change of plans and seek

19 her consent to another investment opportunity, on or about December 12, 2007, LIBERTO

20 delivered to ANTONIA a Promissory Note of the same date, for the principal sum of $375,000 at

21 9.5% interest.  Then for almost one year—until December 3, 2008, LIBERTO represented to

22 ANTONIA in numerous writings as well as orally that her money was invested in the Thousand

23 Oaks property, fully secured by a first trust deed recorded against the property, and going to be re-

24 paid within one year.

25     37.    By letter to ANTONIA dated December 3, 2008, LIBERTO disclosed to ANTONIA

26 for the first time that her money was not invested in the Thousand Oaks property but rather was

27 invested with "Tahoe Investments, care of Richard Sacks" (hereinafter "TAHOE"). LIBERTO had

28 never informed ANTONIA about this company, its manager(s) or its investments, and had never

-8-

1   been provided with any information about how her money was invested, other than LIBERTO's

2   monthly assurances that it was invested in the Thousand Oaks property and was well secured by a

3   trust deed against that property. To the contrary, as LIBERTO has since explained to this Court

4   under oath, he regards the investment with TAHOE to be "a non-performing asset that he can no

5   longer collect on."

6        38.    As a direct and proximate result of LIBERTO's misrepresentations and concealment

7   of the true facts, ANTONIA has been damaged in the amount of $375,000, plus interest at the

8   contract rate (9.5% per annum) from and after July 1, 2009, plus attorney's fees as provided in the

9   Note.

10        39.    Accordingly, LIBERTO's $375,000 obligation to ANTONIA is non-dischargeable

11   pursuant to Bankruptcy Code Section 523(a)(2)(A).

12

13   **SECOND CLAIM FOR RELIEF**

14   **For Non-Dischargeability of Debt for Fraud or Defalcation**

15   **While Acting in Fiduciary Capacity, Embezzlement or Larceny**

16   **[Bankruptcy Code Section 523(a)(4)]**

17        40.    Plaintiffs re-allege and incorporate herein as if fully set forth all of the allegations

18   contained in paragraphs 1 through 39 of this Complaint.

19        41.    At all times relevant hereto, a fiduciary relationship existed between ANTONIA

20   and LIBERTO based on his solicitation of money to fund investments that were either unsecured

21   or secured in his name. Contrary to his representations that he was a mortgage broker matching

22   borrowers and lenders in a secured transaction, he borrowed funds from persons such as Plaintiff

23   ANTONIA, loaned the funds to third parties preparing the documentation of the transaction as

24   though he was the lender, perfected a security interest in favor himself, serviced the loans and, for

25   awhile, paid interest to his investors but did not repay principal to his investors unless pressured

26   to do so and then only if he had the funds available or could borrow them from another investor.

27        42.    While LIBERTO borrowed funds from investors including ANTONIA and told

28   them that their investments would be fully secured, he typically loaned their money to third

-9-

1    parties in the name of his sole proprietorship and perfected a security interest in favor of his sole

2    proprietorship, so that his company's investment was secured, but his investor's interests were

3    never secured by a perfected security interest in any real property. His investors' interests were

4    only as secure as LIBERTO could be trusted. ANTONIA had no recourse, no power to foreclose.

5    LIBERTO solicited ANTONIA's trust and confidence in this arrangement and she reposed such

6    trust and confidence in LIBERTO. Under the circumstances, LIBERTO owed to ANTONIA a

7    duty to act with the utmost good faith for ANTONIA's benefit. LIBERTO was in essence

8    ANTONIA's agent in the transaction, so that LIBERTO was a fiduciary as a matter of law and

9    owed a fiduciary obligation of the highest order toward ANTONIA.

10       43.    In the transaction where ANTONIA loaned to LIBERTO the sum of $375,000 to

11   invest in the Thousand Oaks property but he invested her money in the TAHOE INVESTMENT

12   CLUB without her knowledge or consent, LIBERTO assumed a fiduciary duty to act with the

13   utmost good faith with respect to ANTONIA's funds, not just because he was her agent in the

14   transaction but because he expressly solicited her investment in a secured transaction and then

15   switched and put her money into an unsecured investment that was risky and speculative.

16       44.    LIBERTO solicited ANTONIA's trust and confidence, and he knew that she had

17   placed her trust, confidence and repose in him when she entrusted to him money that she needed

18   and planned to re-invest in a new home. LIBERTO knew that ANTONIA was dependent upon

19   him concerning his use of her funds to make loans to third parties or to invest in risky unsecured

20   investment, that she was susceptible to his influence, guidance, and control, and that she would

21   repose and did repose in him a high level of trust, faith and confidence.

22       45.    LIBERTO was obligated to make full disclosure to ANTONIA of all material

23   facts related to her investments, (e.g., where the funds were to be invested, when the loans were

24   to be repaid) and to make sure her funds were always well-secured.

25       46.    LIBERTO breached his fiduciary duty towards ANTONIA by:

26       (a)    Failing to inform ANTONIA that her funds were not needed to

27   fund a loan on the Thousand Oaks property;

28       (b)    Failing to return to ANTONIA the funds that she had wired to his

-10-

trust account for the specific purpose of funding the Thousand Oaks loan.

( c )    Investing ANTONIA's $375,000 in TAHOE INVESTMENTS without her knowledge or consent.

(d)    Regularly and repeatedly representing to ANTONIA for nearly a year that her $375,000 was invested in the Thousand Oaks property

(e)    Failing to return to ANTONIA her $375,000 principal when she demanded its return in October 2008

(f)    Failing to return to ANTONIA her $375,000 principal when the Note became due on December 12, 2008

(g)    Failing after June 2009 to pay to ANTONIA the monthly interest as it became due on her $375,000 investment.

(h)    Characterizing his $375,000 debt to ANTONIA as an unsecured personal consumer loan in his schedules filed in his Chapter 13 bankruptcy case.

(I)    Characterizing his $375,000 debt to ANTONIA as an unsecured personal consumer loan in his schedules filed in this Chapter 7 bankruptcy case.

(j)    Filing in both his prior Chapter 13 proceeding and in this Chapter 7 proceeding a false Declaration under penalty of perjury stating that he had told ANTONIA that he would invest her funds in TAHOE to get her an 11% return.

(k)    Most recently filing a motion to convert the instant Chapter 7 proceeding to one under Chapter 11.

47.    As a direct and proximate cause of the foregoing breaches of fiduciary duty by LIBERTO, ANTONIA has suffered damages in the amount of $375,000, plus interest and attorney fees.

48.    Accordingly, LIBERTO's $375,000 obligation to ANTONIA is non-dischargeable pursuant to Bankruptcy Code Section 523(a)(4).

/ / /

/ / /

/ / /

-11-

### THIRD CLAIM FOR RELIEF

#### For Non-Dischargeability of Debt for Fraud or Defalcation

#### While Acting in Fiduciary Capacity, Embezzlement or Larceny

#### [Bankruptcy Code Section 523(a)(4)]

49.    Plaintiffs re-allege and incorporate herein as if fully set forth all of the allegations contained in paragraphs 1 through 48 of this Complaint.

50.    In July 2007, LIBERTO represented to ANTONIA that he had an investment opportunity for her—to fund a second mortgage in the amount of $110,000 on a property located at 10920 Woodward Avenue, Sunland, California 91040 ("the Sunland property"), that it would be secured by a second trust deed against the property, that it would pay interest monthly to ANTONIA at the rate of 11 percent per annum, and that the loan would be a short-term loan payable on demand after the Sunland borrower re-financed, which LIBERTO estimated would happen within one (1) year.  In addition, LIBERTO furnished ANTONIA with synopsis of the proposed transaction which included information about the value of the Borrower's remaining equity in the Sunland property and the creditworthiness of the "borrower."  He further represented that after the trust deed recorded, he would execute an assignment of the trust deed.

51.    LIBERTO made these representations with the intent to induce ANTONIA's reliance and her investment of $110,000 into his business.

52.    In reliance on LIBERTO's representations and documentation, on or about July 26, 2007, ANTONIA gave LIBERTO two checks totaling $60,000.  ANTONIA's reliance was justified because of her prior social dealings with LIBERTO, the recommendation of a friend who had invested large sums with LIBERTO, and the documentation he provided.

53.    In January 2008, LIBERTO asked ANTONIA is she could invest the remaining $50,000 to fully fund the Sunland loan and to buy out the other investor in the loan.  ANTONIA advised that she did not have the funds available but that she would ask her sister ORTENCIA to see if she wanted to invest.  LIBERTO explained to ANTONIA that the $50,000 investment would be on the same terms as her $60,000 investment.

-12-

54. In reliance on LIBERTO's representations, Plaintiff ORTENCIA PEREZ delivered to LIBERTO the sum of $50,000 to complete the funding of the Sunland loan.

55. For all of the reasons alleged hereinabove, at all times material hereto, there was a fiduciary relationship between LIBERTO and ORTENCIA just as there was between LIBERTO and ANTONIA such that LIBERTO owed to both ORTENCIA and ANTONIA a duty of utmost good faith based on his solicitation of money to fund investments that were secured in his name. Contrary to his representations that he was a mortgage broker matching borrowers and lenders in a secured transaction, he borrowed funds from persons such as ANTONIA and ORTENCIA, loaned the funds to third parties preparing the documentation of the transaction as though he was the lender, perfected a security interest in favor himself, serviced the loans and, for awhile, paid interest to his investors but did not repay principal to his investors unless pressured to do so and then only if he had the funds available or could borrow them from another investor.

56. While LIBERTO borrowed funds from investors including ANTONIA and ORTENCIA and told them that their investments would be fully secured, he loaned their money to third parties in the name of his sole proprietorship and perfected a security interest in favor of his sole proprietorship, so that his company's investment was secured, but his investor's interests were never secured by a perfected security interest in any real property. His investors' interests were only as secure as LIBERTO could be trusted. Neither ANTONIA nor ORTENCIA had any recourse, any power to foreclose. LIBERTO solicited ANTONIA's and ORTENCIA's trust and confidence in this arrangement and they reposed their trust and confidence in LIBERTO. Under the circumstances, LIBERTO owed to ANTONIA and ORTENCIA a duty to act with the utmost good faith for their benefit. LIBERTO was in essence ANTONIA's and ORTENCIA's agent in the transaction, so that LIBERTO was a fiduciary as a matter of law and owed a fiduciary obligation of the highest order toward ANTONIA.

57. In the transaction where ANTONIA and ORTENCIA loaned to LIBERTO the sum of $110,000 to invest in the Sunland property, the trust deed was recorded in the name of FUNDAMENTAL FINANCIAL SERVICES, LIBERTO's sole proprietorship. LIBERTO was the agent of ANTONIA and ORTENCIA, so he assumed a fiduciary duty to act with the utmost

-13-

1    good faith with respect to their funds, not just because he was their agent in the transaction but

2    because he expressly solicited their investment with the representation that their interests would

3    be secured.

4        58.    LIBERTO solicited Plaintiffs' trust and confidence, and he knew that they had

5    placed their trust, confidence and repose in him when they entrusted to him their money.

6    LIBERTO knew that Plaintiffs were dependent upon him concerning his use of their funds, that

7    they were susceptible to his influence, guidance, and control, and that they had reposed in him a

8    high level of trust, faith and confidence.

9        59.    LIBERTO was obligated to make full disclosure to ANTONIA and ORTENCIA

10   of all material facts related to her investments, (e.g., where the funds were to be invested, when

11   the loans were to be repaid) and to make sure her funds were always well-secured.

12       60.    LIBERTO breached his fiduciary duties to ANTONIA and ORTENCIA by the

13   following acts of fraud or defalcation:

14        (a)    By advising one or more other investors (to wit, Ellen Unt) that her

15        investment was secured by the Sunland property, diluting the adequacy of

16        Plaintiffs' security interest in the property.

17        (b)    Failing to inform ANTONIA and ORTENCIA when the Sunland

18        borrower refinanced the Sunland loan and their funds were liquidated, so that they

19        could demand repayment of their principal.

20        ( c )   Purportedly re-investing their funds into other trust deeds without

21        their knowledge and consent, as represented by LIBERTO in his letter to

22        ANTONIA dated December 3, 2008 (Exhibit "B").

23        (d)    Misrepresenting to the Plaintiffs in his letter to ANTONIA dated

24        December 3, 2008 that their $110,000 was invested in other trust deeds after the

25        payoff of the Sunland loan, as admitted at the Creditor's Meeting herein.

26        (e)    Re-investing Plaintiffs' $110,000 into an unsecured risky

27        investment with TAHOE INVESTMENT CLUB without their knowledge and

28        consent, as admitted by LIBERTO at the Creditor's Meeting herein.

-14-

COMPLAINT

(f)     Continuing to represent to ANTONIA and ORTENCIA after the payoff of the Sunland loan that their $110,000 was invested in the Helfand loan.

(g)     Failing to return to ANTONIA her $60,000 principal from the Sunland loan when she demanded its return in October 2008.

(h)     Failing to return to ORTENCIA her $50,000 principal from the Sunland loan when she demanded its return in October 2008.

(I)     Failing after June 2009 to pay to ANTONIA the monthly interest as it became due on her $60,000 investment.

(j)     Failing after June 2009 to pay to ORTENCIA the monthly interest as it became due on the $30,000 unpaid balance of her $50,000 investment.

(k)     Characterizing his $60,000 debt to ANTONIA as an unsecured personal consumer loan in his schedules filed in his Chapter 13 bankruptcy case.

(l)     Characterizing his $60,000 debt to ANTONIA as an unsecured personal consumer loan in his schedules filed in this Chapter 7 bankruptcy case.

(m)     Characterizing his $30,000 debt to ORTENCIA as an unsecured personal consumer loan in his schedules filed in his Chapter 13 bankruptcy case.

(n)     Characterizing his $30,000 debt to ORTENCIA as an unsecured personal consumer loan in his schedules filed in this Chapter 7 bankruptcy case.

(o)     Most recently filing a motion to convert the instant Chapter 7 proceeding to one under Chapter 11.

61.     As a direct and proximate cause of the foregoing breaches of fiduciary duty by LIBERTO, ANTONIA has suffered damages in the additional amount of $60,000, plus interest.

62.     As a direct and proximate cause of the foregoing breaches of fiduciary duty by LIBERTO, ORTENCIA has suffered damages in the additional amount of $30,000, plus interest.

63.     Accordingly, LIBERTO's additional $60,000 obligation to ANTONIA is non-dischargeable pursuant to Bankruptcy Code Section 523(a)(4).

64.     Accordingly, LIBERTO's $30,000 obligation to ORTENCIA is non-dischargeable pursuant to Bankruptcy Code Section 523(a)(4).

-15-

**FOURTH CLAIM FOR RELIEF**

**OBJECTION TO DISCHARGE**

**FALSE OATH OR ACCOUNT**

**[11 U.S.C. §727(a)(4)(A)]**

65.    Plaintiffs re-allege and incorporate herein as if fully set forth all of the allegations contained in paragraphs 1 through 64 of this Complaint.

66.    In his schedules filed herein, under penalty of perjury, LIBERTO stated that his debts are primarily personal consumer debts as opposed to business debts. He also classified ANTONIA PEREZ and ORTENCIA PEREZ ("Plaintiffs") as "unsecured creditors" having made "Personal Loans" notwithstanding his representations to them, as alleged hereinabove, that their loans were fully-secured real estate loans.

67.    LIBERTO's prior representations to Plaintiffs were made for the express purpose of inducing Plaintiffs' investment in his "mortgage lending business."

68.    Plaintiffs justifiably relied on LIBERTO's representations and invested substantial sums to finance his mortgage business. ANTONIA invested $60,000 and ORTENCIA invested $50,000 to fund the $110,000 loan to Helfand which was secured by a trust deed on the Sunland property in favor of LIBERTO's sole proprietorship, FUNDAMENTAL FINANCIAL SERVICES.

69.    In addition, LIBERTO did not limit his activities to those of a mortgage broker. He induced ANTONIA to invest $375,000 in what he represented would be a mortgage secured by a first deed of trust but in the end he never invested her money in a mortgage at all, let alone one that was secured against the subject real property. Instead, he operated in a poor fashion as a securities broker when he invested her money in the TAHOE INVESTMENT CLUB without disclosing to her any information regarding the investment or obtaining her consent.

70.    In addition, Debtor knowingly and fraudulently misrepresented his business in the Petition as a mortgage broker business. As alleged hereinabove, LIBERTO did not broker transactions which left his lenders in the position of secured creditors. Rather, the documentation he prepared positioned him or his company as both the broker and the lender, leaving his

-16-

1    investors— the true lenders—without any secured interest.  This circumstance was knowingly

2    and fraudulently fabricated so as to enable him to do exactly what he is doing now, discharge his

3    investors and continue to live off of the assets purchased with their life savings.

4        71.    In addition, in his Petition herein – signed under penalty of perjury, LIBERTO

5    knowingly and fraudulently misrepresented his debts as "primarily consumer debts."  Such a

6    representation is false.  On information and belief, LIBERTO knew at all times material hereto,

7    including at the time he signed his schedules under penalty of perjury and filed same with the

8    court, that the following debts were primarily business loans, not personal consumer loans:

9    
| Antonia Perez | 435,000.00 |
| Ortencia Perez | 30,000.00 |
| Mildred Berry | 200,000.00 |
| Patricia Gross | 25,000.00 |
| Sandy Sutton | 50,000.00 |
| Ellen Unt | 22,750.00 |
| Linda Stevens | 23,000.00 |
| Rita Loggins | 90,000.00 |
|  | 875,750.00 |

14       72.    These debts total $875,750.00, more than half of LIBERTO's scheduled liabilities.

15       73.    Accordingly, LIBERTO should be denied a discharge under 11 USC

16    §727(a)(4)(A).

17

18                        **FIFTH CLAIM FOR RELIEF**

19                        **OBJECTION TO DISCHARGE**

20                        **FALSE OATH OR ACCOUNT**

21                        **[11 U.S.C. §727(a)(4)(A)]**

22       74.    Plaintiffs re-allege and incorporate herein as if fully set forth all of the allegations

23    contained in paragraphs 1 through 73 of this Complaint.

24       75.    In his schedules filed herein under penalty of perjury, LIBERTO has reduced the

25    value of certain assets by one-half, under the notion that he is entitled to set aside 50% of the

26    value of the real property interests listed in his Schedule A for his "ex wife."

27       76.    Defendant M. CELESTE LIBERTO ("CELESTE"), the person with whom

28    LIBERTO shares title to these properties, is not his "ex-wife," she is his wife.  Although

                                    -17-

1    LIBERTO filed a Dissolution of Marriage action on February 18, 2009, <u>Liberto, James F. vs.</u>

2    <u>Liberto, Marie Celeste</u> (LASC Case No. ED040789), said case is pending.  No judgment of

3    dissolution has been entered.  The case has had no activity since November 2, 2009.

4         77.    The properties listed in LIBERTO's "Schedule A" are properties that, in their

5    entireties, are a part of this Bankruptcy estate.  They are community property and should be

6    applied in their entirety to the debts and liabilities of the marital community.

7         78.    The liabilities owed to Plaintiffs are community debts, having both been incurred

8    prior to May 28, 2008, the date of separation listed in LIBERTO's Petition for Dissolution and

9    confirmed in CELESTE's responsive pleading.

10        79.    Accordingly, the properties described in LIBERTO's Schedule A should, in their

11   entireties, be and remain a part of the Bankruptcy estate.

12        80.    Accordingly, LIBERTO should be denied a discharge under 11 USC

13   §727(a)(4)(A).

14

15   **SIXTH CLAIM FOR RELIEF**

16   **OBJECTION TO DISCHARGE**

17   **FALSE OATH OR ACCOUNT**

18   **11 U.S.C. §727(a)(4)(A)**

19        81.    Plaintiffs re-allege and incorporate herein as if fully set forth all of the allegations

20   contained in paragraphs 1 through 80 of this Complaint.

21        82.    On or about February 23, 2011, LIBERTO filed in this case a Declaration under

22   penalty of perjury in opposition to ANTONIA's objections to the Petition and Schedules filed

23   herein.

24        83.    ANTONIA had alleged that she had been defrauded by LIBERTO by reason of his

25   representations in December 2007 to induce her to invest $375,000 to fund a loan to a couple in

26   Thousand Oaks which would be secured by a first trust deed against their real property, that she

27   had discovered in late October 2008 that there was never any such loan and that her investment

28   was not secured by the Thousand Oaks property, and that LIBERTO had admitted in December

-18-

1    2008 that her money was invested in the TAHOE INVESTMENT CLUB, a Nevada limited

2    liability company managed by Richard Sacks, without her knowledge and consent.

3         84.    In his declaration under penalty of perjury, LIBERTO stated that in order to meet

4    ANTONIA's demand for 11% interest, he had discussed with ANTONIA and she had agreed to

5    put her $375,000 into an investment pool named Tahoe Investment Group so she could earn 11%

6    interest instead of 9.5% interest.  LIBERTO referred to various interest payments he had paid to

7    ANTONIA in an attempt to show that ANTONIA had reaped the benefit of 11% interest on this

8    investment, but the documentation cited by LIBERTO showed to the contrary that ANTONIA

9    earned only 9.5% interest on the $375,000 investment (a monthly payment of $2,968.75).

10         85.    LIBERTO's claims that ANTONIA knew from the beginning that her funds did

11    not fund a loan on the Thousand Oaks property and that her investment was not secured by a first

12    trust deed on the Thousand Oaks property amount to knowingly false testimony.  LIBERTO gave

13    her a Promissory Note (see Exhibit "A") stating that her money was secured by a first trust deed

14    against the Thousand Oaks property.  Almost every month, from December 2007 through

15    November 2008, LIBERTO sent a letter to ANTONIA with a check for the interest due on her

16    $375,000 investment in "the Mestas Loan" and assuring that her money was "well secured."  In

17    October 2008, when ANTONIA pressured LIBERTO for a copy of the trust deed securing her

18    interest in the Thousand Oaks property, LIBERTO sent several emails continuing to assure that

19    her money was secured by a first trust deed on the Thousand Oaks property, and that a copy of

20    the trust deed securing her money would be forthcoming.  At no time did LIBERTO remind

21    ANTONIA that she had agreed to invest her money with the TAHOE INVESTMENT CLUB.

22    LIBERTO made no mention of the TAHOE INVESTMENT CLUB to ANTONIA until his

23    "coming clean" letter to her dated December 3, 2008, wherein LIBERTO admitted that

24    ANTONIA's $375,000 was not secured by the Thousand Oaks property.  (See Exhibit "B")

25         89.    LIBERTO's Declaration, twice filed with this Court (in the prior case and in this

26    case) is demonstrably and knowingly false and filed to mislead this Court and to subvert justice.

27         90.    Accordingly, LIBERTO should be denied a discharge under 11 USC

28    §727(a)(4)(A).

-19-

**WHEREFORE**, Plaintiffs request that the Court order, adjudge and decree as follows:

1.     That LIBERTO's debts to Plaintiffs be determined non-dischargeable in an amount to be proven at trial but estimated at the time of this filing to be $548,816.00, under Section 523(a)(2)(A) and/or (a)(4) of the Bankruptcy Code;

2.     That pursuant to Section 727(a)(4)(A), LIBERTO be denied discharge, with a 180-day bar to re-filing pursuant to Section 707(b)(3)(B);

3.     That the Court order the trustee, pursuant to Section 727( c )(2), to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge;

4.     That the Court determine that all of the real properties listed in LIBERTO's Schedule A or the proceeds from the sale thereof be and remain in the Bankruptcy estate in their entireties;

5.     That Plaintiffs should be awarded reasonable attorneys fees;

6.     For costs incurred herein; and

7.     For such other and/or further relief in favor of Plaintiffs as may be just and proper.

Dated: May 3, 2011                                LAW OFFICE OF ROBERT A. BROCK

By: _____
    Robert A. Brock
    Attorney for Plaintiffs and Creditors
    ANTONIA PEREZ and ORTENCIA PEREZ

-20-

COMPLAINT

DO NOT DESTROY THIS ORIGINAL NOTE:

## PROMISSORY NOTE
(STRAIGHT NOTE)
*This Document Provided by Fidelity National Title*

$ ___ 375,000 _____ Shadow Hills _____, California, ___ December 12, 2007 __

__ Fundamental Financial Services, a proprietorship, James F. Liberto, owner, after date, for value received, I/we promise to pay to

__ Antonia Perez, and or her assigns __ at _____ Sunland, CA

the sum of _____ two thousand nine hundred sixty eight dollars and 75/100 __, interest only, on the unpaid principal amount from

__ December 7, 2007. _____, at the   rate of   9.5% _____ per cent

per annum, interest payable monthly.   Said funds are secured by a first trust deed on a condominium located at 3083 E. Hillcrest

Drove, in Thousand Oaks.  Payments are to be made monthly, beginning January 1, 2008, and the first payment will cover

approximately 23 days of interest, and will not be for the full amount.      Fundamental Financial Services agrees to service the

loan, making the payments as appropriate

To the place Antonia Perez delegates.

Said loan to run up to one year (12 months) with no prepayment penalty for early payoff.

Should default be made in payment of interest when due the whole sum of principal and interest shall become
immediately due at the option of the holder of the note.  Principal and interest payable in lawful money of the United
States.  If action be instituted on this note I/we promise to pay such sum as the Court may fix as attorney's fees.

*[signature]*, owner

*[signature]*

**DO NOT DESTROY THIS NOTE**

*Exhibit "A"*

Fundamental
Financial
Services

9656 Wheatland
Shadow Hills, CA 91040
Ph. 818-951-6248 • Fx. 818-951-0958
mrfund@earthlink.net

December 3, 2008

Antonia Perez
10653 Mather Ave.
Sunland CA  91040

Antonia:  I am in receipt of all your correspondence and I want to first of all offer my sincere apologies for our current situation.  I have acted in absolute good faith to generate additional income for you and your sister, and feel that your investments are absolutely safe, and have helped me out as well.

In coming clean, as you put it, please let me reiterate that yes, your investments continue to generate interest for you and Hortencia.  After Ms. Helfand paid off, I put Hortencia's money into three separate secured trust deeds.  One as a first trust deed on a condo in Palm Springs. 314 Stevens Rd., #9, for $42,000, instrument #03-108477. The second as a 2nd trust deed on a mobile home park in Lake Isabella for $25,000 located at 35 Evans Road, instrument #08-39546, and finally, an apportioned 2nd trust deed total encumbrance of $35,000, instrument #08-992033.  I continue to work diligently to get other investors to take over these loans to get Hortencia all of her funds, and I believe I will have success with that very soon.

The other funds of yours, Antonia, are invested in trust through an investment I have used substantially, through Tahoe Investments, care of Richard Sacks.  His number is (707) 350-0097, and he is the one who has been paying the interest to you on that investment.  I have indicated that those funds should be returned as quickly as possible, and he is working diligently to have that happen.

So, as you can see, I have used none of the money for my own benefit, and all of the proceeds of the loan amounts are going to you.  I realize our agreement was to have you paid off sooner, however, because of the nature of the economy, and the time it takes to liquidate these types of things, it has taken longer to return all of your capital.

A bank could not pay the twelve percent you've been collecting from the investments, and I can guarantee you will continue to be paid the interest until your investments can be liquidated.  I am working very hard to get them paid off.  Enclosed is the cashier's check for $20,000 promised to Hortencia, as well as November's interest payments.  In addition to guaranteeing the interests payments until liquidation is possible, all I can offer is to execute and record a deed against my own home, for whatever amount you believe to be fair.  I want to be cooperative, while making you as comfortable as possible, and I will certainly do what I can to put your mind at ease.

Sincerely,

Jim Alberto
Fundamental Financial Services

*Don't be Alone when You go to get a Loan*

Exhibit "B"